IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| vs. | : |
| | : CRIMINAL NO. 1:CR-13-0266 |
| SAMUEL WEBB, | : |
| Defendant | : (Judge Caldwell) |
| | : |
| | : |
| | : |

*M E M O R A N D U M*

I. *Introduction*

Defendant, Samuel Webb, has been named in a two-count Indictment. Webb trained and raced horses at Penn National Racetrack, in Grantville, Pennsylvania. The government alleges that on May 2, 2013, Defendant was observed injecting, or preparing to inject, a horse which was to race that evening. Defendant was also allegedly in possession of loaded and unloaded syringes and numerous bottles of medications. The Track's races are simulcast to various locations inside and outside Pennsylvania. Off-track bets can be placed on them under a pari-mutuel betting system, which also uses the wires to collect information on bets made both in and out of state.

Count I of the Indictment charges Defendant with attempting to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. Count II charges Defendant with a Travel Act violation under 18 U.S.C. § 1952(a)(3), using the simulcast of the races to

promote gambling involving the rigging of horse races, with rigging the races being an unlawful activity under Pennsylvania law.

Defendant has filed a motion to dismiss both counts of the Indictment under Fed. R. Crim. P. 12(b)(3)(B) for failure to state an offense.[1]

II.  *Standard of Review*

A defendant may rely on Rule 12(b)(3)(B) to challenge the sufficiency of the allegations in an indictment.  See *United States v. Vitillo*, 490 F.3d 314, 320-21 (3d Cir. 2007).  "[A]n indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Huett*, 665 F.3d 588, 595 (3d Cir. 2012)(quoting *Vitillo*, 490 F.3d at 321). "[I]f an indictment fails to charge an essential element of the crime, it fails to state an offense." *Huett*, 665 F.3d at 595.

In ruling on the motion, "we need not blindly accept a recitation in general terms of the elements of the offense." *Id.* We must also look at the specific facts alleged in the indictment to see if an offense has been alleged. *Id.* We must accept those facts

---

[1] Defendant also argues we lack jurisdiction over the Indictment for two reasons. First, the Commonwealth of Pennsylvania regulates thoroughbred horse racing and allowing this prosecution would infringe on the Commonwealth's ability to regulate the industry. Defendant cites no authority in support of this contention and we reject it.  Second, the Indictment fails to allege sufficient facts to support the charges.  We reject this argument because a factually deficient indictment does not affect our jurisdiction to adjudicate federal offenses.  *See United States v. Vitillo*, 490 F.3d 314, 319-320 (3d Cir. 2007).

as true for the purpose of the motion, *id.* at 596, and we do not decide whether the government has sufficient evidence to prove its case. *Id.* at 595.

III.  *Background*

In relevant part, the Indictment alleges as follows.  "Penn National Racetrack is licensed by the Commonwealth of Pennsylvania to conduct live thoroughbred horse racing and to offer pari-mutuel wagering at its facility in Grantville, Pennsylvania."  (Doc. 1, Indictment ¶ 4).  The races "are simulcast to various other locations, including locations outside the Commonwealth of Pennsylvania, to allow off-track pari-mutuel wagering on these races."  (*Id.*).  "[O]n any given day," the simulcasts are sent "to approximately 116 locations" inside and outside Pennsylvania, including "sites outside of the United States."  (*Id.*).

The simulcasting of the races permits bettors outside Pennsylvania to place bets on the races.  (*Id.* ¶ 2).  It also permits the use of a pari-mutuel wagering system for bettors in several states because betting information can be transmitted "to a central site, so that all bettors wherever they were located could participate in the same pari-mutuel betting pool."  (*Id.*).  Pari-mutuel betting "is a betting system in which the winners divide[ ] the total amount wagered by all bettors . . . in proportion to the sums they had wagered individually and with regard to the odds assigned to particular outcomes."  (Id. ¶ 1).

People who bet on horse races expect that the riders will do their best and that a horse "will not be racing with a foreign substance in it that has been administered in violation of racing rules and regulations."  (*Id.* ¶ 5).  Pennsylvania licenses trainers and

-3-

"subject[s] [them] to various laws, rules and regulations . . . " (*Id.* ¶ 6).  "As a trainer, [Defendant] would profit by the performance of any horse he had in a race that finished in first, second or third place."  (*Id.* ¶ 8).

Count I charges Defendant with an attempt to commit wire fraud.  It alleges as follows:

> On May 2, 2013, in the Middle District of Pennsylvania and elsewhere, the defendant,
>
> SAMUEL WEBB,
>
> did unlawfully, willfully and knowingly attempt to commit an offense against the United States, that is, wire fraud, in violation Title 18, United States Code, Section 1343 in that the defendant, SAMUEL WEBB, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses and representations, was observed in barn 17 of the stable area of Penn National Racetrack injecting or preparing to inject by needled syringe a horse named "Papaleo" which was scheduled to race in Race 6 at Penn National Racetrack that evening, and found to be in possession of numerous loaded and unloaded syringes with needles and numerous bottles of medications.  The defendant, SAMUEL WEBB, thereby attempted to defraud those wagering on thoroughbred horse races simulcast at Penn National Racetrack by racing and attempting to race "Papaleo" with substances in it that could have affected its performance, a material fact unknown to those wagering on that race.
>
> All in violation of Title 18, United States Code, Sections 1349 and 1343.

(Doc. 1, Indictment at pp. 6-7).

Count II charges Defendant with the use of an interstate facility to promote gambling. It incorporates the allegations of Count I and alleges as follows:

> On May 2, 2013, in the Middle District of Pennsylvania and elsewhere, the defendant,
>
> SAMUEL WEBB,
>
> did intentionally and knowingly unlawfully use a facility in interstate and foreign commerce, that is, the simulcast broadcasting by wire and television of races at Penn National Racetrack, to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of a business enterprise involving a violation of the laws of the Commonwealth of Pennsylvania, that is, the rigging and attempted rigging of a publicly exhibited contest in violation 18 Pa.C.S. § 4109, and thereafter performed and attempted to perform an act as described herein.
>
> All in violation of Title 18, United States Code, Section 1952(a)(3).

(Doc. 1, Indictment at pp. 8-9).

IV. *Discussion*

    A. *The Indictment Fails to State the Offense of Attempted Wire Fraud*

"The elements of mail and wire fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *Nat'l Securities Systems, Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012).[2]

---

[2] 18 U.S.C. § 1343, the wire-fraud statute, provides as follows, in pertinent part:

Defendant bases his dismissal motion on the third element.  He argues that there is no allegation that he used interstate wire communications, or attempted to use such communications, to further the fraudulent scheme and that in the absence of such allegations, Count I does not charge wire fraud.  Additionally, he asserts that the Indictment does not allege that "the scheme was aided by the presence of pari-mutuel wagering."  (Doc. 27, Supp'n Br. at p. 5).  As further support for his position, Defendant argues that while the Indictment alleges he would have received a payment if his horse finished first, second, or third in a race, it does not allege the payment "would have been enhanced by the presence of pari-mutuel wagering."  (Doc. 27, Supp'n Br. at pp. 5-6).

In opposition, the government initially argues that Defendant is really moving for dismissal on the basis that the evidence is insufficient to support a conviction and that the sufficiency of the evidence is not a ground for dismissal under Rule 12(b)(3)(B).  We disagree.  Defendant's motion is based on the insufficiency of the allegations of the Indictment, not the insufficiency of the evidence.

In support of its position that Count I charges a wire-fraud offense, the government relies on *United States v. Martin*, 411 F. Supp. 2d 370 (S.D.N.Y. 2006).

---

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than twenty years, or both.

Under 18 U.S.C. § 1349, it is illegal to attempt to commit a violation of section 1343.

However, *Martin* is materially different, as Defendant points out. In *Martin*, the defendant was charged with wire fraud and conspiracy to commit wire fraud in connection with a scheme to fix a horse race by giving a performance-enhancing drug to one of the horses. The court denied a motion to dismiss both charges. Among other things, the defendant argued that the government had not alleged the use of a wire communication to further the scheme. The court disagreed because the indictment contained the following allegations: a co-defendant used interstate wire communications to place bets on the drugged horse and to invite others to bet on the horse. 411 F. Supp. 2d at 374. The court then reasoned:

> In this case, the indictment alleges that the scheme to defraud had two parts: to fix a horserace by giving a racehorse a performance-enhancing substance, and then to "profit" from the doping "by placing bets on that racehorse to win a horse race." Although the alleged use of the wires did not further the doping portion of the scheme, this use was arguably in furtherance of the alleged profiting part of the scheme. The indictment therefore is not deficient for failure to allege that the defendants conspired to use the wires in furtherance of their fraudulent scheme.

*Id.* at 375 (footnote omitted).[3] In the instant case, unlike in *Martin*, there are no allegations that Defendant used interstate wires to bet on races or used the wires to urge others to bet on his drugged horse. *Martin* does not assist the government here.

---

[3] Similar reasoning was used to uphold the substantive wire-fraud count against Defendant for aiding and abetting his co-defendant to commit wire fraud. *Id.*

-7-

Of course, that *Martin* is distinguishable does not mean that Count I does not allege a wire-fraud offense.[4]  However, we agree with Defendant that the count does not allege wire fraud.  Defendant first points out that the Indictment does not allege that he used interstate wire communications, or attempted to use such communications, to further the fraudulent scheme.  This omission from the Indictment certainly supports Defendant but does not end our inquiry.  The wire-fraud statute does not require that the defendant himself send the communication; this element can be satisfied if "the defendant 'knowingly caused' the use of interstate wire communications."  *United States v. Andrews*, 681 F.3d 509, 529 (3d Cir. 2012).  A defendant causes the wires to be used when the use of the wires would occur in the ordinary course of business or if it was reasonably foreseeable that the wires would be used.  *Id.*  Although the government has not made the argument explicitly, since the Indictment alleges that simulcasting and pari-mutuel betting are an integral part of thoroughbred horse racing, it can be said that Defendant should have foreseen the use of interstate wire communications in connection with bets on his horse.  "But the more difficult question is whether [the wire communications] were sufficiently related to [Defendant's] scheme to bring his conduct within the statute."  *United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974).[5]  Or in other words, whether the wire communications "were 'incident

---

[4] Defendant also relies on *Martin*, but to argue that it supports dismissal of the wire-fraud charge.

[5] *Maze* dealt with the mail-fraud statute, but cases dealing with the mail-fraud statute also apply to the wire-fraud statute.  *Andrews*, *supra*, 681 F.3d at 529.

to an essential part of the scheme.'" *United States v. Tiller*, 302 F.3d 98, 101 (3d Cir. 2002)(quoted case omitted).  The wire communications "must be for the purpose of executing the scheme, as the statute requires . . . ." *Maze*, 414 U.S. at 400, 94 S.Ct. at 648 (quoted case omitted).

Defendant in essence says that the wire communications were not for the purpose of executing the scheme because the Indictment fails to allege that the bets placed by way of the pari-mutuel wagering system would have increased the payments he received if his alleged attempt at drugging the horse had aided a first-, second-, or third-place finish in the race.  We agree with Defendant.

The government argues the Indictment satisfies the third element of a wire-fraud offense because it alleges: (1) "how the transmission by wire of the races and pari-mutuel wagering by bettors nationwide is integral to the conduct of thoroughbred horse racing" (which the government collectively identifies as simulcasting); and (2) quoting the Indictment, the scheme to defraud "attempted to defraud those wagering on thoroughbred horse races **simulcast** at Penn National Racetrack . . . ."  (Doc. 30, Opp'n Br. at p. 7)(emphasis added in brief).  The government thus argues that the requirement that interstate wire communications be used in furtherance of the scheme can be satisfied by the television transmission of the races out of state and the interstate wire transmission of bets.

The government's first allegation is insufficient because the wire communications must be for the purpose of executing the fraudulent scheme; it is

-9-

irrelevant that simulcasting and pari-mutuel wagering is integral to thoroughbred horse racing.  The government's second allegation is also insufficient because the Indictment does not allege how Defendant attempted to obtain money or property from the pari-mutuel bettors.  The government relies on *Martin* to argue that the allegation is sufficient on the "money or property" element, but *Martin* is distinguishable for the reason discussed above.  As noted, unlike here, the defendants in *Martin* were placing bets on the doped horse, which meant that those who placed bets on the non-doped horses were losing their wagers.  411 F. Supp. 2d at 373.  This context explains why the court in *Martin* ruled that the decreased value of the bets placed on non-doped horses satisfied the "money or property" element.  411 F. Supp. 2d at 374.

Count I will therefore be dismissed as the government fails to allege a wire-fraud offense.

### B.  *The Indictment Fails to State a Travel Act Offense*

There are three elements to a Travel Act violation: "(1) interstate travel or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of the unlawful activity."  *United States v. Wander*, 601 F.2d 1251, 1258 (3d Cir. 1979).[6]  "There is 'no requirement that the use of the

---

[6]  As pertinent here, 18 U.S.C. § 1952(a)(3) provides as follows:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>
> . . . .

-10-

interstate facilities be essential to the scheme: it is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity.'" *Id.* at 1256 (quoted case omitted).

In moving to dismiss Count II, Defendant makes two arguments. First, Count II fails to allege the first element of the offense "because the presence of a pari-mutuel wagering system at Penn National [Racetrack] did not facilitate Defendant's alleged business enterprise," the rigging of horse races by doping horses. (Doc. 27, Supp'n Br. at p. 10). Defendant further argues that no Travel Act offense has been charged because "it cannot be said that Defendant's business enterprise was furthered by the presence of a pari-mutuel wagering system." (*Id.*). Defendant asserts that the government is trying to convert a misdemeanor under Pennsylvania law, see 18 Pa. Con. Stat. Ann. § 4109(a)(2), into a federal crime.[7] He asserts he is "facing serious federal criminal charges simply because Penn National [Racetrack] utilizes a pari-mutuel wagering system," (*id.*, p. 11), and the existence of this system is so fortuitous and peripheral to the alleged business enterprise that no Travel Act claim can be made based

---

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform--

(A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; . . . .

[7] Under section 4109(a)(2), it is a misdemeanor of the first degree "to prevent a publicly exhibited contest from being conducted in accordance with the rules and usages purporting to govern it . . . by "tamper[ing] with any person, animal or thing."

on the existence of this system. *Wander, supra,* 601 F.2d at 1256 ("in certain circumstances, 'the use of interstate facilities (will be) so minimal, incidental, and fortuitous, and so peripheral to the activities' of the defendants, that conviction under this Act will be barred")(quoted case omitted).

In opposition, the government makes the following arguments. First, Defendant is again seeking to dismiss the Indictment based on the sufficiency of the evidence, not on the sufficiency of the government's pleading. We disagree. Second, the government has sufficiently alleged the use of the wires because:

> the use of the wires to facilitate interstate wagering by bettors is essential to thoroughbred horse racing. The sport would not exist without wagers being placed on the races. Individuals would not invest the substantial amounts of money necessary to breed, raise, train and race thoroughbred horses if there were no purses offered. The sport is legalized gambling which is the reason it is heavily regulated. Therefore, the use of the interstate facility to accept wagers from bettors nationwide and for the broadcasting of races via simulcast is not simply incidental to thoroughbred horse racing. It is the sine qua non of the sport. It is indispensable.

(Doc. 30, Opp'n Br. at p. 12). We disagree with the government. This "use of the interstate facility to accept wagers from bettors nationwide and for the broadcasting of races via simulcast" may be essential to thoroughbred horse racing, as the government points out, but it does not establish that Defendant's use of the wires (if he did use the wires at all) facilitated the business enterprise involving the rigging of horse races in violation of Pennsylvania law.

In reaching this conclusion, we recognize that the government alleges that Defendant "did intentionally and knowingly unlawfully use a facility in interstate and foreign commerce, that is, the simulcast broadcasting by wire and television of races at Penn National Racetrack . . . ."  (Doc. 1, Indictment p. 8).  However, "we need not blindly accept a recitation in general terms of the elements of the offense."  *Huett*, *supra*, 665 F.3d at 595.  We must also look at the specific facts alleged in the indictment to see if an offense has been alleged.  *Id.*  Here, we cannot ignore the factual allegations that it is Penn National Racetrack that offers pari-mutuel wagering (Indictment ¶ 4) and simulcasting of the races (Id. ¶ 2) and that it is the bettors, not Defendant, who are using the wagering system by placing their bets.  (Id.).

Defendant's second argument against Count II is that it fails to allege the third element of a Travel Act offense, the subsequent performance of an overt act in furtherance of the unlawful activity.  *Wander*, *supra*, 601 F.3d at 1258.  Defendant contends that Count II actually avers that the overt act was performed before the alleged use of the interstate facility as the overt act is the attempt to drug the horse and the use of the facility would have been engaging in pari-mutuel wagering.  Defendant contends the horse would not have been drugged after the wagering.

The government responds by asserting that section 1952(a)(3) only requires an attempt at an overt act, not that the act succeed, and it has made the necessary allegation of an attempted drugging of the horse.

We agree with Defendant. The government's response does not address Defendant's argument, which is based on a temporal defect in the Indictment, the failure to allege an overt act committed after Defendant's use of interstate facilities. The government's response is only to assert that it may allege an attempt at an overt act.

Count II fails to state a Travel Act offense. We will issue an order dismissing the Indictment.

                                         /s/William W. Caldwell
                                         William W. Caldwell
                                         United States District Judge

Date: June 5, 2014